Good morning. My name is Joseph Grubb and I represent the defendants, Mr. and Mrs. Ng, as well as a putative group of seniors for potential class action who attempted to enroll in the Humana Healthcare Medicare Prescription Drug Program in late 2005. The defendants in this case are two. They're Humana Health Plan and Humana Inc. Humana Health Plan is what's called a PDP, or a licensed approved provider of prescription drug benefits, and Humana Inc. isn't. This case was dismissed, presented to 12B in the district court. So the claims that the ums are making on behalf of themselves and other senior citizens is that Humana made multiple and limited experience and its intent to deliver prescription drug coverage enrollment by January 1, 2006. And that was in brochures and other? Brochures, web materials, marketing materials, those types of things. Can we claim that there were any oral misrepresentations? I believe that they spoke on the phone with some representative from Humana or the plan? Or they met with actual people at like a Walmart or things like that. Is there any allegation of that in here? I believe that the allegations are intended to be that broad, but the specific focus, at least this case died so quickly after it was filed, but the specific focus is on the marketing materials. And generally, not just Humana Health Plan, but Humana Inc. put its name on and put out there two seniors attempting to solicit their enrollment. Because this was a 12B motion and it was dismissed, we have to assume that the allegations and the complaint of fraud, of fraud in the inducement, of breach of contract, of consumer protection violations are true. And the issue then, of course, comes down to whether... What relief is the class seeking or the UMS seeking? The UMS, yeah, there's no certification, but the UMS actually... UMS, I'm sorry, UMS. I try not to say UM, but the only relief they are seeking is a refund of the premiums that they paid for the period in which they were not enrolled on behalf of themselves. And we don't know, but there were at least approximately a million seniors enrolled through Humana for the prescription drug program. Which was January, is that right? It was to begin in January. The complaint alleges as of the time it was filed, February 6th, that the UMS had still not been enrolled and had still not received the materials necessary to use or participate in the prescription drug program that they had already paid for. Their money had already been taken from them. It was being deducted from their social security, I gather. It was being deducted. And it was. It was deducted for January. So maybe they were enrolled, but were not being given service. Well, I think this complaint alleges they were not enrolled. And so for purposes of 12b, I think the fact is this court has to work from that premise that they were not actually enrolled by either January 1st or February 6th. That's maybe a legal issue. Sure. And we can look at that. Of course. Yeah. Well, whether they were enrolled or not, I don't think there's been an argument. I guess it's the other thing by the Humana defendants that the UMS were enrolled on January 1st. And I don't think that's actually a disputed fact. So the question is, are these state law claims, the tort claims, the contract claims, the consumer protection type claims, are they preempted? And there's really nothing new about the preemption analysis. There has to be both a – well, first we start with a presumption against finding preemption of state law remedies. And second, there has to be a clear or manifest intent by Congress to preempt those rights. I guess if in fact they were enrolled, I think that it would be preempted because they provide a whole series of remedies, what you're supposed to do. Well, actually, I don't know that there are any remedies established, if you're talking about grievances or coverage determinations, any remedies that address pre-enrollment inducements. If they were enrolled on the 1st of the 2006 – My premise was if they were enrolled, there's a whole series of remedies. Yes. And we're not actually seeking any recovery or damages or refund, essentially. If they were enrolled, the case would die on those terms. But this has to do with what happened before they were enrolled and what induced them to enroll, which was the promise that we'll get you there, and they didn't do it. Why doesn't the preemption clause take care of those pre-enrollment statements regarding marketing material? Two things. First, I think, again, we have to look for a clear intent to preempt. And I don't think anything that's been provided to this Court establishes a clear intent to preempt state law remedies with respect to inducements or pre-enrollment solicitations or activities. What does it mean when it says the standards established under this part shall supersede any state law or regulation? Then if you go to the standards, it talks about standards that govern marketing materials. Two issues with that. First, there have to be standards, or else there would be no preemption, because that's the only preemption. Why aren't the regs standards? Well, they are standards, but they don't address these claims. Those standards, we respectfully disagree with the Humanity Defendants that those standards respect tort claims, fraud claims, breach of contract claims for pre-enrollment periods. And we can talk about the particular regulations. But isn't there one provision in those regulations that says that the plan shall not make any misrepresentations or misleading statements? I believe that. Isn't that a standard regarding fraud or negligence or whatnot? I believe the regulation you're talking about is CFR 423.51F sub 4. And it does say the plan may not mislead, confuse, or misrepresent the PDP sponsor or plan. However, that's the first sentence of that clause. And that entire paragraph talks about misrepresenting the identity of the plan or the nature of an endorsement, implying an endorsement from the federal government regarding that particular company or things like that. It is not talking about general misrepresentation. And again, when we get back to the standard of reviewing whether preemption was intended, either by the Secretary or by Congress, if the Secretary is fulfilling Congress's intent, that's not a clear and manifest intent to deprive consumers of their own state tort remedies and consumer protection remedies. Additionally, the Secretary itself has stated it doesn't believe that it is going to supersede each and every state requirement and state law, and specifically says that they don't believe tort law would be superseded by any processes established in the regulations. And at the very end of it, this is 70 FR 4362, but even at the end, enrollees will still have access to various state remedies in which an issue is unrelated to the plan's status as a PDP, a drug provider. And this case is not about the status. And although the defendants point out in their brief that this really means that subcontractors working with companies like Humana would not be preempted, they're not enrollees. Enrollees are one type of person. Those are people who are customers of the drug prescription drug plan, or potential customers even. And so in that case, we think that this comment by the Secretary and the fact that the limitation of that particular reg, which is the one that mentioned in this representation, do not clearly evidence a manifest intent to preempt state tort law either by Congress or by the Secretary. The other issue with respect to Humana, Inc., which is a distinct defendant here, which is the parent company of Humana, is that no matter what, Humana, Inc. should not be entitled to umbrella preemption protection because it's not regulated in any way by the Secretary or the statute. It's a corporation that owns another company. How do your claims differ against Humana, Inc. as opposed to the plan? The claims themselves at this point in the case, everything was represented as Humana, including Humana, Inc. So they're the same claims as far as pre-enrollment fraud and misrepresentation and saying something would be done when it wasn't going to be for this potentially millions, one million seniors that were enrolling through this plan. So I can't really distinguish any claims between Humana, Inc. and Humana Health Plan other than to say if one of them were to fall by the wayside under preemption, which we don't concede, Humana, Inc. is still responsible for its own conduct and may not run and hide under its subsidiary's statutory obligations and then, of course, argument for preemption. The case is, you know, the... Well, you know, I can't, I can't... It just seems like if, that if the claim against the plan is preempted, how can you, how can it go forward against Humana, Inc.? Yeah, and the claim isn't against the plan. The claim is against the companies. The plan itself, there's no argument that the plan was, once anyone was enrolled, that they misadministered it or they somehow did it. The claim is against the companies and the fact that you give preemption to a company because it owns or does something that might involve a preempted activity, there isn't preemption by association. There isn't under ERISA. There isn't under the federal banking laws. For example, and we cited those in our brief, agents who work on behalf of national banks have been denied preemption when they've argued, well, this is a protected, preempted activity. ERISA non-fiduciaries, accountants, others who work with ERISA plans are not exempt for their own torts and they're not allowed to argue preemption because this is not a claim against the plan. The plan, from our client's perspective, didn't include them at the time they filed this lawsuit. They had not been enrolled and they had basically paid money for something they had not been enrolled in. So... So you're just, your allegation is just that basically somebody on behalf of Humana made these representations. Well, not just somebody. I mean, the corporation made these representations in writing and they made them... This was a period of time when the Medicare prescription drug program was about to take effect. And in the months leading up to that, all the insurance companies were soliciting people and trying to find who's going to be part of their group of enrollees and they were all making claims and soliciting people and attempting to get customers because this started on January 1st, 2006. That's when... And so... Humana clearly stated that was the enrollment date for everybody and that was when it was supposed to happen and it didn't happen. And according to our complaint and according to the status of the case in the lower court when it was dismissed, those allegations should be construed as true. That our clients were not enrolled as they were promised to be. And I think the very specific allegations in their complaint about representations, marketing materials, dates when they were to be enrolled by and the fact that that did not happen. Let me take you back to this regulation where it says in a Part D plan may not, and this is describing things that it can't do in its marketing activities. And that sub 4 has a first sentence that says engage in activities that could mislead or confuse Medicare beneficiaries or misrepresent the Part D sponsor or its Part D plan. It seems to me that engage in activities that are really false marketing stands separately from saying what you can say about the plan itself. They just wanted to say separately, look you can't say that this plan is recommended over plans over other plans, but also you can't engage in activities that mislead. So it seems to me that certainly there is a standard which is to cover marketing and that there's a remedy here. Well, we can talk about whether there's a remedy in a sec, but I will say that I think under general statutory construction we have a specific sentence here and then it's delimited by the following sentences. But the activities I think are broader than just saying you can't represent that you're better than others. Well, perhaps that's what the Secretary could have said if they meant, but again looking at this through the lens of preemption analysis which is there has to be a clear manifest intent. And the Secretary has already said they don't intend or believe they even have the mandate to preempt state tort laws in all respects and other remedies. Taking that in context with a regulation promulgated by the Secretary and taking the rest of that section in consideration, it doesn't that would be one sentence that essentially would say all misrepresentation claims against inducement and to people who are not even part of the plan yet are essentially gone. And I think Well, they're not gone if they're provided a remedy under the Right. And that will address the issue about whether or not, the district court didn't address it, but of course the other argument that the defendants made was that we hadn't exhausted administrative remedies. But that's the, what remedies? What meaningful remedy exists? I don't know that because there are essentially two remedies under the prescription drug plan. There is either a coverage determination or there is grievances. Grievances is the catch-all for everything else. I think the statute is very clear. Coverage determination is only a decision about a drug formulary, a reimbursement rate, a cost, and it only applies specifically by its statutory, by its regulatory language to a sponsor. What remedy do you have under grievance? You have no articulated remedy that I'm aware of. You have the, yes, I suppose the evidence, I'm not even aware that there's evidence in the record that Humana put together a grievance system or promulgated one by the time that this complaint was filed, but the remedy doesn't exist because Humana is the sole and final arbiter of all grievances. There is no appeal and Humana has acknowledged that. So to the extent this regulation is meant to propel all tort claims and all consumer claims against insurance practices into the abyss, really, because if it goes into the grievance process, it goes to Humana, which is the sole and final arbiter, that's not a meaningful remedy. And as we've discussed, we don't think if there's a meaningful remedy, you have, you can be accused of not exhausting administrative remedies. There could be some tort remedies that the Secretary thought would not be covered. For example, what if Humana was, yeah, you'd ordered aspirin and they're sending you something that they know isn't aspirin. I mean, that might be. Well, that might be although actually Humana is only reimbursing for what happens. But in that context, I would again say with the presumption against preemption, the Secretary needs to promulgate a more specific regulation that actually says that, rather than we don't believe we believe enrollees will still have their state rights and will have tort remedies. Let me just ask a practical question. So they were supposed to have been enrolled on January 1. Correct. 2005. So let's say on and they went to their local pharmacy or however they're supposed to get their drugs under the plan. And they didn't get them because maybe in the data and all the confusion, their name wasn't there. So they pay out of pocket for their medication. But three weeks later, they contact Humana and they say you know, we had to pay for our meds ourselves and we want to be reimbursed. Why couldn't they do that? Well, that presumes that they were ever enrolled in the Humana plan. And I don't mean to be Well, they thought that they were. Well, and they paid for it. They paid for it. So why couldn't they just Is there a mechanism for that, I guess? Could they have done that? Only once they were enrolled. And I don't believe the record reflects that they were actually enrolled. Do the regulations define enrollment? You know, Your Honor, they may. But I'm not familiar with that because that's never been an issue that was argued either to the district court or frankly in the briefs here that they were enrolled. I surmise that in the thousands of pages there might be a definition for that. But with respect As far as you know, they never could have requested to be reimbursed for their out-of-pocket under those circumstances. That they could have? Well, I suppose they could have, but if it falls under a grievance procedure Humana could have according to their own interpretation just made their own decision and it would have been a final situation. But the question here is So if they were enrolled there may have been a request to Oh, I only have about two minutes, but I'd like to just address one other thing brought up. I don't know if this court has accepted or reviewed the amicus brief We never got notice of it but I know that we were served with it. An argument was made in there that there's this remedy of Actually I've lost my train of thought on that Maybe if I can answer a question or save my two minutes Save your two minutes and you can gather your thoughts May it please the Court, Brian Boyle for Humana Defendants. Let me ask the question you posed, Judge Paez, about the definition of enrollee. It is in the briefs and I think it answers the questions that both you and Judge Fletcher were pursuing with respect to the rights of an individual in these circumstances who hasn't gotten his ID card yet, but who has elected enrollment That is, if you look at Part 423.560 the definition includes not only people who have been enrolled, but also those who have elected to enroll in a plan. And so that provision and the ensuing procedures acknowledge the standing of somebody in the OMS position to pursue a claim for recovery of what Your Honor referred to as out-of-pocket costs for prescriptions This Court confronted a cleverly concealed claim for Medicare benefits in a case a few years back, Kaiser v. Blue Cross, and held without the benefit of the express preemption provision that I'm relying on held that that cleverly under the Medicare Act was required to be channeled through the exclusive dispute resolution process that's set forth in the regulations What we confront here is a not very cleverly concealed claim for benefits, I submit, or not concealed at all, because the gravamen of the case and this is evident from the complaint plaintiffs have had an opportunity to clarify to the contrary, the gravamen of the case is that these individuals were deprived of the benefits to which they were entitled under the Part D plan. This is about coverage and by two independent routes the unmistakable conclusion I submit is that this claim must be presented in the first instance to the dispute resolution procedure that Congress and the Department of HHS has prescribed the two routes Describe for us the difference between grievance and coverage They could have proceeded as a grievance I assume I think in this case they probably had both a coverage determination to present as well as a grievance In fact, if I can return to counsel I pulled up a couple of pages from the Prescription Drug Benefit Manual which is cited in our brief although not this page I'm quoting from pages 16 and 17 from the Prescription Drug Benefit Manual and I will quote here, in some cases Part D plan sponsors will need to process complaints using the Part D plan sponsor's grievance procedures and its coverage determination procedures For example, an enrollee might complain that because he or she has had to wait too long to fill a prescription he or she obtained the medication out of network and wants to be reimbursed for out-of-pocket expenses The enrollee's complaint contains both a request for payment i.e. a request for a coverage determination and a grievance about the timeliness of benefits and to our eyes, it couldn't be clearer that the that a remedy was contemplated by the regulations by Congress for individuals precisely in these circumstances and it flows for two independent reasons First, you have the Express Preemption Clause which is described in the briefs exceptionally broad it essentially, as I read it decrees field preemption anywhere there are federal standards many field preemption and of course here there are standards imposed on Humana, imposed on the Part D plan with respect to dispute resolution How broad do those standards have to be? I'm sorry, Your Honor? How broad do the standards have to be to satisfy the preemption standard? Judge Fletcher quoted the one about engaging in activities that aren't misleading does that just encompass everything? That's kind of a difficult question to answer in the abstract and that's why I use the field preemption analogy I think if there is a standard for instance, with respect to marketing and by the way, the standard here is exceptionally broad because it extends not only to written material which has to be pre-approved by CMS and they have to review the material before it can be used but it also extends to call scripts that might be used in oral presentations and so forth if there's a standard in that area then state law is displaced in that field and I think there may be tough cases on the outer reaches of the standard and thus the outer reaches of preemption but I don't think this is a tough case because here and I'll cut to the chase here and then maybe ask answer any questions from the court I get here, there is a standard that prescribes a method for ventilating coverage disputes for getting benefits and that is a I think the court may be familiar with a very carefully designed dispute resolution process that begins with the first step that these plaintiffs ignored which is a request for benefits from Humana and the way that would take place here is they would call up Humana and say I just went out of pocket for prescription drugs because I didn't have my ID card until the middle of January please reimburse me, that's the first step followed if there's a denial by reconsideration with the Part D plan followed thereafter by an independent review entity that's under contract to the Department of Health and Human Services followed thereafter if the amount in controversy is $100 or greater by a proceeding before an ALJ, followed thereafter by judicial followed thereafter by an opportunity to take the coverage question to the Medicare Appeals Council and then and only then is judicial review in the offing and only if the amount in controversy exceeds $1,000 and then the proceeding that this culminates in is a very strange proceeding it's not one that I've seen anywhere else in the law where it is the Secretary of Health and Human Services that is the defendant Humana can join as a party to that proceeding but the defendant is the secretary because it's the secretary that's decided whether these benefits should be awarded or not. How does all of that relate how does all that administrative process of grievance and coverage determination and what you just described relate to their claim that well we never would have joined Humana to begin with because we were given all this hullabaloo they misrepresented what we were going to get the misrepresentation as I understand it was you said we would be enrolled by a date certain and begin receiving benefits and we didn't get those benefits there's nothing, the plan wasn't misdescribed in any elaborate sense it's simply we didn't get the benefits on time well the promise was broken I accept that as an interpretation of this pleading they didn't get the materials they needed in order to obtain prescription drugs but the reason it relates directly the procedure I described relates directly to those claims is that the coverage dispute process is open not only to those who have been enrolled but to those who have elected enrollment and indeed there is a separate procedure I think it's part 42336 or 38 that allows for disenrollment in certain circumstances and it suggests if you read it that once you elect enrollment you are legally enrolled until you convince CMS that you should be disenrolled and one of the circumstances for disenrollment is where there was no legally valid enrollment to begin with but CMS has to make that finding pursuant to that regulation and the implication I think is that if you elect, you're in you have benefits, you have rights to present a coverage dispute and go all the way to judicial review through the prescribed process there was a suggestion in the briefs, though not at argument today that the expertise of CMS is not required here on the nature of these claims and that there is no value to the administrative process I don't think that matters because I think the administrative process is exclusive by operation of the Medicare Modernization Act but I do disagree and the reasons are many fold first of all, we don't know what drugs these plaintiffs paid for out of pocket according to the complaint we don't know whether they're covered drugs whether they are covered under the particular plan that they elected with Humana we don't know what the appropriate cost share is for those drugs under the plan and under the regulations we don't by the way this is all very important because this is not a program in which Humana alone bears the financial risk it is a very complicated unbelievably complicated program under which the federal government shares ultimate financial risk with Humana there's a risk corridor at the very end of the tiers in which the federal government pays 95% of the costs so I think there is a compelling reason in the context of this case to let me ask my question just a little bit differently again following up on Judge Fletcher's question as you understand it you advocated a very broad preemption but apparently there's something left in state law I understand so what not pinning you down or anything but what do you think is left? this court struggled with a very similar question in the Kaiser V Blue Cross case didn't deal with preemption it dealt with the other ground for this result which is that any claim that arises under the Medicare Act has to be submitted to the exclusive dispute resolution process that culminates in judicial review under 405G a claim that is inextricably intertwined with a claim for benefits such as the claim here arises under the Medicare Act but the court struggled with the same issue CMS clearly in its pronouncement of the final rule and some of the other rulemaking materials believed that there were certain kinds of tort remedies that would be preserved I think CMS had in mind the artery case from this court where the essence of the claim was not about benefits any longer I think the precise facts were that the beneficiary was denied an airlift under her Medicare HMO plan and as a result died and so in the ensuing lawsuit wrongful death under California law the court said well gosh this isn't about benefits any longer she doesn't want compensation for the airlift that she didn't get she wants to be compensated for the medical injury she suffered I think there is going to be a category of cases where the prescribed administrative process cannot remedy the alleged injury that is somehow protected under state law where the tort claim can proceed but this case doesn't require us to grapple with the outer reaches of preemption because the only loss that is cited in this complaint is the loss of coverage, the loss of benefits that is it. Now there is a parlor trick they roll out which is to say well we don't want the benefits we will take a portion of the $6.90 that was deducted from our social security checks in January 06 and it seems kind of silly to me since presumably with any drug that I'm familiar with that you can get at a pharmacy the likely cost would be far in excess of $6.90 but you don't have to answer that question because the federal prescribed remedy for people in the circumstances is you get the benefits that is the prescribed remedy and here is the procedure to get the benefits you present your prescription receipts you make a claim for coverage and if it is denied you can take it to an independent decision maker and ultimately even to judicial review with respect to Humana Inc let me short circuit this and then I will see if there are any questions the preemption provision we are dealing with here says that state law is superseded with respect to a Part D plan now there is no particular conduct that is attributed to Humana Inc the parent company of the Part D plan sponsor here all the conduct of the defendants is rolled in together and there is every reason to believe that what plaintiffs are saying is that Humana was enlisted, Humana Inc was enlisted to help market the Part D plan they signed on so what they are saying is that they are responsible for the misrepresentations I guess that is what they are saying I think that is what they are saying and it would be strange indeed if Congress designed a system where alright you had to take any claim for benefits to a prescribed administrative process to the extent it involves the plan or the plan sponsor but it is no holds barred if you want to sue employees of the plan sponsor if you want to sue affiliates of the plan sponsor if you want to sue the independent review entity or any other third party that happened to be coordinated with the Part D plan sponsor in presenting the benefit we cited regulations in the brief your honor that indicates that CMS very clearly contemplated that a Part D plan and its sponsor would rely on affiliated entities and third parties to deliver the benefits and I could scarcely imagine a more thorough gutting of this administrative scheme if that preemption provision weren't read to preclude claims against those working hand in glove with the Part D sponsor if this is about benefits and I go back to what I said at the outset this is about benefits they claim it is about pre-enrollment marketing enrollment materials they rely on some ERISA cases to suggest that well if there is anything prior to the enrollment that's fair game for the application of state law and I think you take one look at the marketing standards and the enrollment standards and so forth you can realize that can't be right those standards necessarily apply to the pre-enrollment process and therefore displace those pre-enrollment standards and Judge Fletcher cited the regulation is a bit general true but there are remedies prescribed for violations of those standards not only the benefit remedy that I've described but the remedy outlined in 423.38 to disenroll I think it specifically allows disenrollment at the approval of CMS if you can prove that there were misrepresentations regarding the plan terms and so this is a complete package it has both the standards as well as remedies at least with respect to the anyway the ERISA cases are off point because as the court is aware ERISA preemption kicks in only when somebody becomes a plan member and state law is applied to the plan that is not the preemption clause that you're dealing with here the preemption clause by virtue of standards that specifically focus on the pre-enrollment process marketing displaces state law in that area as well if your honors have any questions I'd be happy to answer thank you I'll just address a couple of those points still Humana has not Humana Inc has not claimed it's subject to Medicare regulation or discipline or the statute and it is if you read the ERISA cases there are cases that allow plan accountants people related to the plan who are not fiduciaries to be sued for state law for their conduct even for soliciting people into the plan we're not seeking benefits but this idea that the remedy for paying to be enrolled somehow the remedy is you can be disenrolled well there's no remedy saying that they get their money back that's not articulated you can be declared disenrolled but that is not a specific enough of any type of remedy to be able to overcome the presumption against preemption and find any clear or manifest intent on behalf of the secretary or the congress I just want to point out there was not a part of January that these people were not enrolled the complaint states that as of February 6th no one had received any materials and were still not enrolled so to think of this as just a matter of weeks and again this was dismissed under rule 12 and I think that for purposes of analysis the Humana defendants misrepresented not just in marketing materials but in emails and other things that are identified in the complaint that people would be enrolled and they were not and they took their money and they're asking for it back there's nothing in the record showing that grievance procedure that is allegedly permits any type of remedy like that from the Humana defendants which they claim they're the sole and unappealable decider you're just about out of time I am and I'm just about out of things to say thanks thank you we appreciate the arguments on both sides thank you very much thank you our next case for argument
judges: Fletcher, Paez, Schwarzer